UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRIS HOPKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-1017-B |
| | § | |
| VIVA BEVERAGES, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant VIVA Beverages LLC's Motion to Dismiss for Lack of Subject

Matter Jurisdiction (doc. 14), filed December 27, 2013. For the reasons stated below, the Motion is

**DENIED without prejudice.**

### I.

### BACKGROUND

This case arises out of a company's attempt to exercise its right to repurchase a former

employee's interest in the company post-termination. Plaintiff Chris Hopkins entered into an

Employment Agreement with VIVA Beverages, LLC (VIVA) on January 26, 2011. Docs. 2, Orig.

Pet. ¶ 6; 17, Employment Ag. Ex. A. According to the Agreement, Hopkins would receive ownership

shares that would vest at 0.5% per year over the course of four years. Doc. 17, Employment Ag. Ex.

A § 4(c)(ii). The Employment Agreement, in conjunction with VIVA's Operating Agreement, gave

VIVA an option to repurchase Hopkins's shares upon the termination of his employment. *Id.*

§ 4(c)(v); doc. 17, Operating Ag. Ex. B § 7.5.  The Operating Agreement specifically provided that

Upon the Termination of Service of any Service Provider Member . . . the Company

may elect to purchase all or a portion of the Class C Units held by such Service Provider Member . . . at a purchase price per Unit equal to the Repurchase Value of the Units, by delivering a written notice of such election to such Service Provider Member within ninety (90) days after the Termination of Service.

Doc. 17, Operating Ag. Ex. B § 7.5(a).[1] *Repurchase Value* is defined in the Employment Agreement as

with respect to any Class C Units held by any Service Provider Member . . . upon the Termination of Service of such Service Provider Member, . . . if such Termination of Service is due to such Service Provider Member's death or disability or the termination of such Service Provider Member by the Company without Cause, the amount of proceeds that would be distributed on such Units if the company sold all of its assets for their respective Fair Market Values on the date of such Termination of Service and applied the proceeds of such sale in accordance with Section 8.2 . . . .

*Id.* § 1.7. Pursuant to the Operating Agreement, any notice of election to repurchase must be delivered within ninety (90) days of termination of service, and the closing of any repurchase of units must occur no later than one hundred twenty (120) days after termination of service. *Id.* § 7.5(a)-(b).

Hopkins was terminated from his employment on August 5, 2012, at which time half of his ownership shares had vested. Docs. 17, Hopkins Decl. Ex. 1, at 1; 2, Orig. Pet. ¶ 7. VIVA subsequently notified Hopkins of its intent to exercise its repurchase rights. Doc. 2, Orig. Pet. ¶ 8. VIVA offered Hopkins $1 for the entirety of his shares, which he denies is the appropriate valuation under the Employment and Operating Agreements. *Id.* ¶ 10. After the parties were unable to agree on the proper valuation of Hopkins's shares, Hopkins filed suit against VIVA in state court on February 5, 2013, alleging that VIVA breached the Employment and Operating Agreements when it failed to offer him an appropriate value for his shares and seeking a declaratory judgment that

---

[1]The Employment Agreement explains that Hopkins is a "Service Provider Member" for the purposes of the Operating Agreement. Doc. 17, Employment Ag. Ex. A § 4(c)(v).

VIVA's method for valuing the shares was contrary to the Agreements. *Id.* ¶¶ 9-13. The case was subsequently removed to this Court on March 8, 2013. Doc. 2, Notice of Removal 1.

On October 22, 2013, VIVA notified Hopkins that it was withdrawing its notice of election to purchase his units. Doc. 15, Denney Email Ex. C. The parties later jointly moved for this Court to abate the discovery and mediation deadlines in this case pending a ruling on the effect that this withdrawal had on the status of this case, and the Court agreed. Doc. 13, Order.

## II.

## ANALYSIS

VIVA maintains that this action should be dismissed because the Court lacks subject matter jurisdiction. Specifically, it argues that once it withdrew its notice of intent to exercise its option to repurchase Hopkins's shares in VIVA, any controversy that may have supported Hopkins's claims became moot. Hopkins responds by arguing that a bilateral agreement was formed when VIVA issued its notice of intent to repurchase his shares and that VIVA breached this contract when it failed to properly value his interest in VIVA.

Before the Court can consider the parties' respective claims, it must first determine whether VIVA's Motion pursuant to 12(b)(1) is the proper procedural tool for resolving the issues in this case. A court must address a challenge to subject matter jurisdiction before turning to the merits of a case. *SR Partners Hulen, LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 3:10-CV-437-B, 2011 WL 2923971, at *3 (N.D. Tex. July 21, 2011) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). The Court has the power to dismiss under Rule 12(b)(1) based on (1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by the court's resolution of disputed facts. *Williamson v. Tucker,* 645 F.2d 404, 413

(5th Cir. 1989). When a defendant raises a "facial attack" on subject matter jurisdiction, that is, one based on the complaint alone, "the plaintiff is left with safeguards similar to those retained when a 12(b)(6) motion to dismiss for failure to state a claim is raised - the court must consider the allegations in the plaintiff's complaint as true." *Id.* at 412. If the jurisdictional allegations in the complaint are sufficient, then the complaint stands. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1983).

A "factual attack" on jurisdiction, however, is based on matters outside the pleadings and is supported by evidence submitted by the defendant. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) ("A 'factual attack,' however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."); *Ramming*, 281 F.3d at 161. A court's authority under Rule 12(b)(1) extends well beyond that conferred by Rule 12(b)(6) or even Rule 56 - the court has the additional power to resolve factual issues in order to determine if it has jurisdiction to hear the case. *Williamson*, 645 F.2d at 412-13.

Whether a court will rule on a challenge to jurisdiction on a 12(b)(1) motion depends on the circumstances, however, because if the challenged basis of jurisdiction is also an element of the cause of action, "the proper course is to limit the jurisdictional inquiry to facial scrutiny and reserve factual scrutiny for the merits." *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989); *Williamson*, 645 F.2d at 415 ("Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.").

- 4 -

In this case, VIVA has not properly addressed the mootness issue in its 12(b)(1) motion because in ruling on mootness the Court would also necessarily have to rule on one of the fundamental elements of Hopkins's claims. Mootness is "the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008) (citations omitted). If a case is moot, then a federal court has no constitutional authority to resolve the issues that it presents. *Id.* at 525. Because mootness is a function of standing, it would normally be properly dealt with by a motion under Rule 12(b)(1). *Xerox Corp.*, 888 F.2d at 350.

In order to determine if this case is moot, however, the Court would first have to determine whether a bilateral contract existed between the parties when VIVA sought to withdraw its election to repurchase, which is an element of both Hopkins's breach of contract and declaratory judgment claims. Under Michigan law, an option is merely an offer.[2] *Hunter Square Office Building, LLC v. Paragon Underwriters, Inc.*, No. 235115, 2003 WL 21186651, at *4 (Mich. Ct. App. May 20, 2003) (citing *Le Baron Homes v. Pontiac Housing Fund*, 29 N.W.2d 704, 706-707 (Mich. 1947)). An option will ripen into a binding bilateral contract when it is exercised if the optionee strictly complies with the terms of the option. *Le Baron Homes*, 29 N.W.2d at 706; *Amoco Oil Co. v. Kraft*, 280 N.W.2d 505, 508 n.3 (Mich. 1979) ("An option becomes vested when the conditions and procedures specified in the contract are complied with in such a manner as to give the lessee an immediate right to exercise the option."); *Oshtemo Twp., Kalamazoo Cnty. v. City of Kalamazoo*, 257 N.W.2d 260, 262

---

[2]Both parties agree that Michigan law governs this dispute. Docs. 16, Pl.'s Resp. 3 n.1; 18, Def.'s Reply 2.

(1977) ("An option is, in effect, only an offer which requires strict compliance with the terms of the option both as to the exact thing offered and within the time specified. Failure to so comply results in loss of the rights under the option."). It is a fundamental tenet of contract law that once a party has accepted a contract, it cannot unilaterally withdraw its acceptance. *Cooper v. Lansing Wheel Co.*, 54 N.W. 39, 40 (1892).

If VIVA strictly complied with the terms of the option contract, then a binding contract was formed that VIVA could not vitiate through its withdrawal of election, making any subsequent refusal to pay according to the formula provided in the Operating Agreement a breach of contract. Thus, the challenged basis of jurisdiction (mootness based on the lack of any contractual obligation) is also an element of the cause of action (the existence of a contract). *I.B. Mini-Mart II, Inc. v. JSC Corp.*, No. 296982, 2011 WL 1435978, at *2 (Mich. Ct. App. Apr. 14, 2011) ("The elements of a breach of contract action are (1) the existence of a contract between the parties, (2) the terms of the contract require performance of a certain action by the defendant, (3) the defendant breached its obligation to perform, and (4) the plaintiff incurred damages as a result of the breach."); *Am. Fed'n of Gov't Emp. v. Stone*, 146 F. App'x 704, 705 (5th Cir. 2005) (holding that because "the determination of whether a contract existed" between the parties was "determinative of both the district court's jurisdiction . . . and the merits of [the plaintiff's] breach of contract claim . . . [t]he district court was . . . required to assume jurisdiction and decide the claim on the merits"). Accordingly, the best course for the Court to take in addressing VIVA's Motion is to limit the jurisdictional inquiry to facial scrutiny and reserve factual scrutiny for the merits. *Xerox Corp.*, 888 F.2d at 350.

A. *Facial Scrutiny of Plaintiff's Claims*

"Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161. A facial attack will succeed if the Court can determine from the face of the pleadings that it lacks subject matter jurisdiction. *Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998). As with other 12(b) motions, the Court takes the allegations in the complaint as true. *Id.*

Neither party devotes much attention to facial scrutiny of Hopkins's complaint. Indeed, the parties seem to agree that this Court had jurisdiction over this matter once it was removed and only dispute whether this Court continues to have subject matter jurisdiction after VIVA withdrew its election to repurchase. Doc. 14, Def.'s Br. 1-2. VIVA only raises a facial challenge to Hopkins's complaint in its reply. It asserts that, taking Hopkins's allegations that VIVA's notice of election did not comport with the Employment and Operating Agreements as true, no binding contract could have been formed because VIVA would not have strictly complied with the terms of the option. Doc. 18, Def.'s Reply 5.

Accordingly, VIVA argues that because there is no contract upon which Hopkins can base his claims, this case became moot when it withdrew its election to repurchase. *Id.* at 7. Even though these arguments are more geared towards showing that Hopkins fails to state a claim rather than showing that there is a lack of jurisdiction, VIVA's claims fail because, taking all of the allegations in the complaint as true, Hopkins has pled sufficient facts to confer subject matter jurisdiction on this Court. Hopkins has alleged that the parties are completely diverse and, as VIVA noted in the Notice of Removal, the amount in controversy exceeds the jurisdictional amount required. Doc. 2, Notice of Removal 2. Moreover, contrary to what VIVA asserts, Hopkins has stated sufficient facts

to support the causes of action pled in his complaint. Hopkins states that VIVA exercised its option and that, rather than properly value the shares as provided by the language in the option, it offered him an insufficient amount. Doc. 2, Orig. Pet. ¶ 10. If VIVA properly exercised its option and elected to purchase Hopkins's shares at the proper value, and then later offered an amount that was in fact not sufficient according to the formula provided in the Operating Agreement, then Hopkins could maintain a breach of contract claim because he could show the existence and breach of a contract. He would similarly have a basis for requesting a declaratory judgment as to the proper valuation method under the Operating Agreement. VIVA has thus failed to show that no set of facts exists upon which Hopkins could claim relief. *Ramming*, 281 F.3d at 161.

VIVA maintains that Hopkins's allegation that "VIVA's actions constitute a breach of the Employment and Operating Agreement" dooms his breach of contract claim because the Operating Agreement, which contained the option, was merely an offer. Doc. 2, Orig. Pet. ¶ 11. Yet Hopkins's allegations are not as inconsistent as VIVA suggests, because in alleging that VIVA breached the Employment and Operating Agreements, Hopkins implicitly alleges that VIVA violated the contract that was formed upon its exercise of its option, the terms of which were contained within the Operating and Employment Agreements. Accordingly, Hopkins has stated sufficient facts to make out his claims and establish jurisdiction in this Court.

B. *Factual Scrutiny of Plaintiff's Claims*

Because the parties rely on matters outside the pleadings, the issues related to the existence of a contract under the option agreement are better suited for consideration in the context of a motion for summary judgment under Rule 56. The parties have already addressed in some detail the law and issues related to deciding this case on the merits. In order to decide the parties' dispute in

this case, however, the Court would have to determine whether VIVA's attempt to exercise its option was sufficient to create a bilateral contract between the parties. Such a determination would require the interpretation of the terms in the Operating Agreement in order to ascertain their exact meaning and the specific terms of the option. Although the Court could engage in such an analysis based on the Operating Agreement's language, it would also likely need to see the language of the initial notice that VIVA sent to Hopkins as well as any other relevant evidence in order to determine if all of the terms of the Operating Agreement were complied with and all conditions precedent were met such that a bilateral contract was created. *Holly Road Medical Assoc., P.C. v. Ucer*, No. 259173, 2006 WL 1628476, at *2 (Mich. Ct. App. June 13, 2006) (citing *Amoco Oil*, 280 N.W.2d at 508 n.3).

Rather than rule on the merits based on the spare documentary evidence currently before it, the Court will afford the parties the opportunity to brief and to submit any additional materials relevant to the issue of whether a bilateral contract was formed when VIVA attempted to exercise its option.[3]

## III.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES without prejudice** VIVA's Motion

---

[3]The Court notes that the parties devote some space in their briefs to the 120-day deadline set out in the Operating Agreement for closing on the repurchase of any shares. Doc. 17, Operating Ag. Ex. B § 7.5(b). The parties dispute whether this deadline offers another ground upon which the Court could find this case moot. Docs. 16, Pl.'s Resp. 5-6; 18, Def.'s Reply 7 n.1. Based on the briefing and evidence before it, the Court cannot conclude that this deadline necessarily moots this case because it is unclear how the deadline would affect Hopkins's breach of contract and declaratory judgment claims if a bilateral contract had been formed when VIVA exercised its option. In their forthcoming briefs on summary judgment, therefore, the parties should further address this issue and demonstrate how this deadline bears on the resolution of the matters in this case.

to Dismiss for Lack of Subject Matter Jurisdiction (doc. 14). VIVA is **ORDERED** to file its Motion for Summary Judgment as to Hopkins's claims of breach of contract and request for declaratory judgment **within thirty (30) days** of this Order. Hopkins's response to the motion will be due twenty-one (21) days after VIVA files its Motion, and VIVA's reply, if any, will be due fourteen (14) days thereafter.

The Court also notes that this case was scheduled for trial on April 21, 2014. To the extent that any deadlines related to the trial of this matter were not dealt with in the Court's prior Order abating discovery and mediation deadlines, the Court hereby **ORDERS** that all other deadlines in this case are abated until the Court is able to rule on VIVA's forthcoming Motion for Summary Judgment.

SO ORDERED.

SIGNED: April 21, 2014.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE