UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRIS HOPKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-1017-B |
| | § | |
| VIVA BEVERAGES, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant VIVA Beverages LLC's Motion for Summary Judgment (doc.
20), filed on May 21, 2014. For the reasons stated below, the Motion is **DENIED**.

## I.

## BACKGROUND[1]

A.    *Factual Background*

The facts of this case have been previously recounted in this Court's Memorandum Opinion
and Order Denying Defendant's Motion to Dismiss for Lack of Jurisdiction. *See* doc. 19. To
summarize, this case arises out of a company's attempt to exercise its right to repurchase a former
employee's interest in the company following the employee's termination. Plaintiff Chris Hopkins
("Hopkins") entered into an employment agreement with Defendant VIVA Beverages, LLC
("VIVA") on January 26, 2011 (the "Employment Agreement"). Docs. 2, Orig. Pet. ¶ 6; 24, Pl.'s Ex.
A, Employment Agreement. According to the Employment Agreement, Hopkins would receive

---

[1] The Court draws its factual account from the parties' pleadings, summary judgment briefs, and
evidentiary submissions. Unless characterized as a contention by one of the parties, these facts are
undisputed.

ownership shares that would vest at 0.5% per year over the course of four years. Pl.'s Ex. A, Employment Agreement § 4(c)(ii). The Employment Agreement, in conjunction with VIVA's operating agreement (the "Operating Agreement"), gave VIVA an option to repurchase Hopkins's shares upon the termination of his employment. *Id.* § 4(c)(v); doc. 24, Pl.'s Ex. B, Operating Agreement § 7.5. The Operating Agreement specifically provided that

> [u]pon the Termination of Service of any Service Provider Member . . . the Company may elect to purchase all or a portion of the Class C Units held by such Service Provider Member . . . at a purchase price per Unit equal to the Repurchase Value of the Units, by delivering a written notice of such election to such Service Provider Member within ninety (90) days after the Termination of Service.

Pl.'s Ex. B, Operating Agreement § 7.5(a).[2] The Operating Agreement further defined *Repurchase Value* as follows:

> [W]ith respect to any Class C Units held by any Service Provider Member . . . upon the Termination of Service of such Service Provider Member, . . . if such Termination of Service is due to such Service Provider Member's death or disability or the termination of such Service Provider Member by the Company without Cause, the amount of proceeds that would be distributed on such Units if the company sold all of its assets for their respective Fair Market Values on the date of such Termination of Service and applied the proceeds of such sale in accordance with Section 8.2 . . . .

*Id.* § 1.7. Pursuant to the Operating Agreement, any notice of election to repurchase must be delivered within ninety (90) days of termination of service, and the closing of any repurchase of units must occur no later than one hundred twenty (120) days after termination of service. *Id.* § 7.5(a)–(b).

---

[2] The Employment Agreement explains that Hopkins is a "Service Provider Member" for the purposes of the Operating Agreement. Pl.'s Ex. A, Employment Agreement § 4(c)(v).

Hopkins was terminated from his employment on August 5, 2012, at which time half of his ownership shares had vested. Orig. Pet. ¶ 7; doc. 24, Pl.'s Ex. 1, Hopkins Decl. ¶ 2. On October 10, 2012, VIVA issued its notice of election to repurchase Hopkins's shares (the "Notice of Election"), which it valued at $0.00. Docs. 21, Def.'s Brief in Support of Mot. for Summ. J. ("Def.'s Br.") 3; 22, Def.'s Ex. C, Notice of Election. VIVA indicated that it was exercising its right to repurchase Hopkins's shares and offered him $1.00 for their entirety, which Hopkins denies is the appropriate valuation under the Employment and Operating Agreements. Def.'s Ex. C, Notice of Election; Orig. Pet. ¶¶ 8, 10.

B.    *Procedural Background*

Hopkins filed this action against VIVA in the 95th Judicial District Court of Dallas County, Texas on February 5, 2013, alleging that VIVA breached the Employment and Operating Agreements when it failed to offer him an appropriate value for his shares. Orig. Pet. ¶¶ 9–11. Hopkins further sought a declaratory judgment that VIVA's method for valuating the shares was contrary to the Agreements. *Id.* ¶¶ 12–13. Defendant removed the case to this Court on March 8, 2013. Doc. 2, Notice of Removal 1.

On October 22, 2013, VIVA notified Hopkins that it was withdrawing its Notice of Election to repurchase his units. Doc. 22, Def.'s Ex. D, Withdrawal Notice. VIVA then filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (doc. 14) on December 27, 2013, contending that, once it withdrew its notice of intent to exercise its option to repurchase Hopkins's shares, any controversy that may have supported Hopkins's claims became moot. Based on a facial scrutiny of Hopkins's claims, the Court held that he had stated sufficient facts to make out his claims and establish jurisdiction with the Court. *See* doc. 19, Order Denying Defendant's Motion to Dismiss for

Lack of Jurisdiction 8. In conducting a factual scrutiny of Hopkins's claims, however, the Court found that it would have to determine whether a contract had been formed between the parties at the time VIVA withdrew its election to repurchase Hopkins's shares—an inquiry that would require additional briefing and materials. *Id.* at 9. The Court accordingly directed VIVA to file its Motion for Summary Judgment presenting its arguments regarding Hopkins's claims. *Id.* at 9–10. VIVA timely filed the present Motion for Summary Judgment (doc. 20) on May 21, 2014 as to Hopkins's claim for breach of contract and request for declaratory relief. Hopkins submitted his Response (doc. 23) on June 11, 2014, to which VIVA replied (doc. 25) on June 25, 2014. The Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the Court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-

movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with some metaphysical doubt as to material facts, . . . by conclusory allegations, . . . by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (internal citations and quotations omitted). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).

The district court does not have a duty to search the entire record to find evidence supporting the non-movant's opposition. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). Rather, the non-movant must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [her] claim." *Bookman v. Shubzda*, 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## III.

## ANALYSIS

A.      *Breach of Contract*

Hopkins asserts a breach of contact claim against VIVA, arguing that a contract was formed when VIVA issued its notice of intent to repurchase his shares and that VIVA committed a breach by failing to properly valuate the shares in question. Orig. Pet. ¶¶ 9–11. VIVA moves for summary judgment on Hopkins's claim based on two alternative theories. First, VIVA asserts that if it did not properly assess the value of Hopkins's shares, as Hopkins contends, then it did not exercise its right to repurchase the shares in accordance with the Operating Agreement, and thus no contract was formed. Def.'s Br. 1–2. Alternatively, VIVA maintains that if it did in fact properly assess the shares' value, then it effectively exercised its option under the Employment Agreement. *Id.* at 2. Hopkins, however, rejected VIVA's valuation, and VIVA withdrew its Notice of Election, thus precluding the formation of a contract. *Id.*

The parties agree that Michigan law governs the dispute. *See* Def.'s Br.; doc 23, Pl.'s Resp. Under Michigan law, the  elements of a breach of contract claim are "(1) the existence of a contract between the parties, (2) the terms of the contract require performance of a certain action by the defendant, (3) the defendant breached its obligation to perform, and (4) the plaintiff incurred damages as a result of the breach." *I.B. Mini-Mart II, Inc. v. JSC Corp.*, No. 296982, 2011 WL 1435578, at *2 (Mich. Ct. App. Apr. 14, 2011).

As this Court has previously explained in its Order Denying Defendant's Motion to Dismiss for Lack of Jurisdiction, an option is merely an offer to enter into a contract. *Hunter Square Office Building, LLC v. Paragon Underwriters, Inc.*, No. 235115, 2003 WL 21186651, at *4 (Mich. Ct. App.

May 20, 2003) (citing *Le Baron Homes v. Pontiac Housing Fund*, 29 N.W.2d 704, 706–07 (Mich. 1947)). An option will ripen into a binding bilateral contract when it is exercised if the optionee strictly complies with the terms of the option. *Le Baron Homes*, 29 N.W.2d at 706; *Amoco Oil Co. v. Kraft*, 280 N.W.2d 505, 508 n.3 (Mich. 1979) ("An option becomes vested when the conditions and procedures specified in the contract are complied with in such a manner as to give the lessee an immediate right to exercise the option."); *Oshtemo Twp., Kalamazoo Cnty. v. City of Kalamazoo*, 257 N.W.2d 260, 262 (1977) ("An option is, in effect, only an offer which requires strict compliance with the terms of the option both as to the exact thing offered and within the time specified. Failure to so comply results in loss of the rights under the option.").

> 1.      Notice of Election to Repurchase Shares

The Court first considers the parties' arguments with respect to the first theory upon which VIVA bases its Motion for Summary Judgment on the breach of contract claim, which posits that no contract could have been formed if VIVA indeed failed to assess the value of Hopkins's shares in accordance with the Operating Agreement. VIVA suggests that Hopkins's breach of contract claim is based on an inconsistency; Hopkins cannot, VIVA argues, simultaneously allege that VIVA failed to properly valuate his shares and that it entered into a contract for the repurchase of those shares. Def.'s Br. 5. Thus, VIVA understands Hopkins's claim as one based on VIVA's "failure to properly exercise an option," which would preclude the formation of a contract and, by extension, would invalidate any claim for the breach of such a contract. *Id.* VIVA clarifies that the exercise of the option is a one-step process in which the Notice of Election containing the Repurchase Value assessed for the shares is delivered; it is not, as Hopkins implies, a two-step process in which VIVA

- 7 -

first enters into a contract by exercising the option and then is required to valuate the shares in accordance with the Employment and Operating Agreements. Doc. 25, Def.'s Reply 4–5.

In support, VIVA points to *Hunter Square Office Building, LLC v. Paragon Underwriters, Inc.* for the proposition that an option, such as the one included in the Agreements, must "be exercised in strict compliance with its terms, or it is lost." 2003 WL 21186651, at *3; Def.'s Br. 5–7. In *Hunter Square*, the Michigan Court of Appeals affirmed the grant of summary disposition of a plaintiff landlord's breach of contract claim on the ground that the defendant had not properly exercised its option to extend a lease. 2003 WL 21186651, at *4. The parties had agreed that the option to extend the lease could be accepted only by a writing that was personally delivered or sent by registered or certified mail. *Id.* The court found that because defendant neither personally delivered the letter exercising the option nor sent it by registered or certified mail, defendant failed to strictly comply with the option, thus precluding the formation of a contract. *Id.*

VIVA further relies on *Holly Road Medical Associates, P.C. v. Ucer* to demonstrate that all requirements provided in an option must be satisfied in order for the option to be adequately exercised and thus form a contract. No. 259173, 2006 WL 1628476, at *3 (Mich. Ct. App. June 13, 2006); Def.'s Br. 7–8. In *Holly Road*, plaintiff sought to exercise an option to purchase property, which provided that the option is to be exercised within a certain period and that each party is to contract with a real estate appraiser who is a Member of the Appraisal Institute. 2006 WL 1628476, at *1. Because plaintiff did not contract with an appraiser who met the description outlined in the option, the Michigan Court of Appeals affirmed the trial court's conclusion that the option was not accepted as required, and that no contract was thus formed. *Id.* at *3–4.

In response, Hopkins seeks to clarify that VIVA's Notice of Election to exercise its option formed a contract, but that a breach occurred because the valuation of the shares was not done in accordance with the Employment and Operating Agreements. Pl.'s Resp. 1–2. Hopkins further challenges the relevance of the cases on which VIVA relies. *Id.* at 4. He notes that the holding in *Hunter Square* does not preclude a claim for breach of contract in the present case, as VIVA indicated its decision to exercise the option in the time and manner provided in the Agreements. *Id.* Hopkins further emphasizes the distinctions between VIVA and the defendant in *Holly Road*. *Id.* While the defendant in *Holly Road* failed to satisfy an essential requirement of the option—obtaining a certain type of appraiser—VIVA's Notice of Election indicated that it satisfied the requirement that the shares are to be valuated according to the method provided in the Agreements. *Id.* at 4–5. Thus, Hopkins contends that a contract was formed when VIVA expressed its intent to exercise the option to repurchase the shares, and that it was thus bound to use the specific formula set forth in the Agreement when valuating Hopkins's shares. *Id.* at 7.

Based on a review of the arguments and evidence presented by the parties, considered in the light most favorable to the non-movant, Hopkins, the Court finds that a contract was formed when VIVA exercised its option to repurchase the shares, as it accepted the option in the manner established by the Agreements. The Operating Agreement provides that VIVA may exercise its option to repurchase Hopkins's shares

> at a purchase price per Unit equal to the Repurchase Value of the Units, by delivering a written notice of such election to such Service Provider Member within ninety (90) days after the Termination of Service.

Pl.'s Ex. B, Operating Agreement § 7.5(a). The *Repurchase Value*, in turn, is defined as

> the amount of proceeds that would be distributed on such Units if the
> company sold all of its assets for their respective Fair Market Values
> on the date of such Termination of Service and applied the proceeds
> of such sale in accordance with Section 8.2 [governing the liquidation
> of company interests].

*Id.* § 1.7. Section 8.3 of the Operating Agreement further specifies that "[s]uch fair value shall be

determined by the Board of Managers in good faith and upon exercise of its reasonable discretion."

*Id.* § 8.3(d).

VIVA presents the Notice of Election it sent to Hopkins on October 10, 2012, (less than 90

days following Hopkins's termination), which provides:

> Based on the current value of Viva Beverages LLC (the "Company"),
> and taking into account the Company's outstanding liabilities, capital
> structure and accrued preferred distributions payable on cash
> contributions made by the Company's members, the repurchase value
> of your Class C Units, determined in accordance with the Company's
> operating agreement, is ZERO DOLLARS ($0.00).
>
> The Company *hereby exercises its right to purchase all of your vested
> Class C Units* pursuant to Section 7.5 of the Company's operating
> agreement, for an aggregate purchase price of ONE DOLLAR AND
> NO CENTS ($1.00).

Def.'s Ex. C, Notice of Election (emphasis added).

Based on this evidence, VIVA timely exercised its option to repurchase Hopkins's shares "by

delivering a written notice of such election," as required by Section 7.5(a) of the Operating

Agreement. The Notice of Election further indicates that the repurchase value of the shares was

"determined in accordance with [VIVA's] operating agreement," thus satisfying the requirements

for accepting the option, as provided in the Operating Agreement. Def.'s Ex. C, Notice of Election.

The Notice of Election thus demonstrates "strict compliance with the terms of the option both as

to the exact thing offered and within the time specified." *Oshtemo Twp., Kalamazoo Cnty.*, 257

- 10 -

N.W.2d at 262. The Notice's indication that the valuation was done in accordance with the Operating Agreement therefore establishes that the option was accepted as was required. Accordingly, the exercise of the option converted it into a binding bilateral contract between the parties. *Le Baron Homes*, 29 N.W.2d at 706.

However, the exercise of the option and the existence of the contract for the repurchase of the shares does not preclude Hopkins from asserting that in so accepting the option and valuating his shares at $0.00, VIVA breached Section 8.3(d) of the Operating Agreement requiring that the "fair value shall be determined by the Board of Managers in good faith and upon exercise of its reasonable discretion." Pl.'s Ex. B, Operating Agreement § 8.3(d).

VIVA's characterization of Hopkins's claim as one based on VIVA's "failure to properly exercise an option," is mistaken and further contradicted by other statements made in VIVA's filings. Def.'s Br. 5; Def.'s Reply 3. VIVA itself recognizes that "[Hopkins] disagreed with VIVA's good faith valuation and exercise of its right to re-purchase the Units and brought this action alleging that [VIVA] breached the Employment Agreement and Operating Agreement by improperly valuing the Units." Def.'s Br. 3 (citing Orig. Pet. ¶¶ 8–13). In fact, Hopkins does not argue that VIVA failed to properly exercise the option, but rather asserts that a contract was formed when VIVA expressed its intent to exercise the option to repurchase the shares, and was thus bound to use the specific formula set forth in the Operating Agreement when assessing and paying their value. Pl.'s Resp. 3. Hopkins then contends that VIVA committed a breach because it did not "pay . . . the fair market value of [the] units of ownership as contemplated by the Employment Agreement and related Operating Agreement." Orig. Pet. ¶ 8.

In this context, the cases upon which VIVA relies do not support its request for summary judgment on the issue of whether a contract was formed. *Hunter Square* provides that an option must "be exercised in strict compliance with its terms, or it is lost." 2003 WL 21186651, at *3. The case does not involve a question regarding a party's compliance with the provision of a contract, (such as VIVA's valuation of the shares pursuant to the valuation provision of the Operating Agreement in the present case), but discusses whether the manner in which a communication was exchanged between parties met the acceptance requirements listed in the option. *Id.* Because the parties in the case at bar in no way dispute whether the manner of acceptance was performed as required, *Hunter Square* does not advance VIVA's arguments.

The court in *Holly Road* similarly explains that the requirements included in an option must be strictly satisfied. 2006 WL 1628476, at *3–4. However, while the plaintiff in *Holly Road* failed to exercise its option by neglecting to fulfill one of its requirements—contracting with a certain type of appraiser—there is no indication in the present case that VIVA failed to accept the option as provided in the Agreement. *Id.* In exercising its option, VIVA did not dispute or ignore the need to repurchase or valuate the shares according to the Operating Agreement, as its Notice of Election indicates that it determined the repurchase value of Hopkins's shares "in accordance with the Company's operating agreement." Def.'s Ex. C, Notice of Election (emphasis added). As previously stated, Hopkins does not claim that VIVA failed to accept the option as required, but that in accepting the option and entering into the repurchase contract, it failed to pay the fair market value of the shares as provided in the Operating Agreement. Orig. Pet. ¶ 8.

Moreover, VIVA's argument in favor of summary judgment with respect to the breach of contract claim rests entirely on the notion that, by asserting the breach of a contract based on the

inadequate valuation of his shares, Hopkins negates the possibility that such a contract may have existed between the parties. Under this line of reasoning, Hopkins's breach of contract claim is eviscerated at the moment he asserts it. Such logic would lead to an absurd result, one which the Court is unwilling to formulate. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 545 (6th Cir. 2007) (stating that "contracts must be construed consistent with common sense and in a manner that avoids absurd results . . . .") (internal citations and quotations omitted). VIVA fails to recognize that it may have accepted the option as the Operating Agreement requires, thus forming a contract, but that the payment for the shares pursuant to this contract may constitute a breach of the Operating Agreement's valuation provisions. While VIVA is correct in noting that the exercise of the option and the valuation of the shares is not a two step process, as Hopkins implies in his Response, this does not preclude him from asserting a claim for breach of contract based on VIVA's refusal to pay their fair market value, done pursuant to VIVA's exercise of the repurchase option.

    2.    <u>Withdrawal of the Notice of Election to Repurchase Shares</u>

With respect to VIVA's alternative theory in support of its Motion for Summary Judgment, the Court disagrees that VIVA's withdrawal of its decision to repurchase the shares invalidated any contract that may have been formed between the parties. Def.'s Reply. 3. As previously stated, it is a fundamental tenet of contract law that once a party has accepted a contract, it cannot unilaterally withdraw its acceptance. *Cooper v. Lansing Wheel Co.*, 54 N.W. 39, 40 (1892). Therefore, as the Court noted in its prior Order Denying Defendant's Motion to Dismiss for Lack of Jurisdiction, if VIVA strictly complied with the terms of the option contract, then a binding contract was formed. Based on the present summary judgment evidence and briefing, a contract was indeed formed when

VIVA submitted its Notice of Election and accepted the option as required by the Operating Agreement. VIVA's email indicating its decision to withdraw its Notice of Election does not negate the formation of the contract. *See* Def.'s Ex. D, Withdrawal Notice. Moreover, VIVA's argument that the parties never reached "a mutuality of assent" because they disagreed with respect to the value of the shares is of no moment, because the parties' agreement on this matter was not a requirement for the exercise of the option under the Operating Agreement. Def.'s Reply 2; Pl.'s Ex. B, Operating Agreement § 7.5. Thus, any failure to pay the value of the shares according to the formula provided in the Operating Agreement would constitute a breach of contract on behalf of VIVA, regardless of its withdrawal of the Notice of Election or the parties' dispute over the value of the shares.

Based on a review of the evidence in the record, the Court concludes that a contract was in fact formed between Hopkins and VIVA for the repurchase of Hopkins's shares. Because VIVA's Motion for Summary Judgment as to Hopkins's claim is entirely based on the argument that there was no contract between the parties (in that it was never formed or was rejected by Hopkins), and because the Court concludes that a contract was indeed formed, VIVA's Motion for Summary Judgment on Hopkins's breach of contract claim is **DENIED**.

The Court notes that VIVA presents neither argument nor evidence as to whether a breach of any contract between the parties occurred. As there is little in the record regarding the actual method VIVA used in valuating the shares or with respect to the existence of any other breach, a fact question remains as to this issue.

B.    *Declaratory Judgment*

In addition to his breach of contract claim, Hopkins further seeks a declaratory judgment that VIVA's method for valuating the shares was contrary to the Agreements. Orig. Pet. ¶¶ 12–13. VIVA does not present distinct arguments or evidence demonstrating that this claim is without foundation or that the valuation of the shares was indeed carried out in accordance with the Agreements. Instead, as in support of its request for summary judgment on the breach of contract claim, VIVA appears to contend that Hopkins's request must fail because there was no contract between the parties. Def.'s Br. 1–2. Because the Court previously rejected this argument, and because VIVA submits no other materials to show that Hopkins's declaratory judgment request is without merit, the Court **DENIES** VIVA's Motion for Summary Judgment on this claim.

## IV.

## CONCLUSION

For the foregoing reasons, VIVA's Motion for Summary Judgment (doc. 20) is **DENIED**.

**SO ORDERED.**

**SIGNED: March 24, 2015**.


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE